Good morning, my name is Gary Leper. I represent Mr. Lombardi, and I would like to reserve such time as remains when I'm done initially for rebuttal. All right. Oh, and we need for Officer Lombardi as well. Okay. Are you splitting your time? No, he's just, in case I get real nervous, he'll make me feel more comfortable. Okay, all right. The concern that the defense has Did you want to, you stand there through the argument, or did you want to sit, and then if we need you, we'll call you up. Thank you. The defense obviously has no quarrel with the decision about qualified immunity, and as it does not, its concern is solely with the effect of the timing of that ruling. As the Supreme Court has noted, if the ruling on qualified immunity or the grant of qualified immunity is not made in a timely fashion, it is tantamount in effect to not granting it at all. That's what happened here. It happened in two parts. First, it manifestly affected the decision on the First Amendment, and second, and critically, it affected the court's decision about damages. I have that question about the First Amendment and Fourth Amendment claims. Yes, ma'am. I don't see how the jury was prejudiced, and correct me if I am misspeaking, but they would have heard the same evidence anyway. Would they not? What evidence would they not have heard? Well, first, they wouldn't have heard the experts, because the experts dealt totally with the excessiveness of the force. Secondly, much of the examination of the witnesses pertained to the occasion of excessive force. The judge himself mentioned, and I quote this in my brief, that this case was about excessive force and the Fourth Amendment. So that even to the extent that actual evidence would have been the same, and it would not have been entirely for the reasons I've just stated, it's the rhetorical or oral emphasis that skewed the proceedings as a consequence. So much, by the way, much of the evidence would have been the same, but not all of it, and certainly not the interpretation of it, and certainly not the arguments. Thank you. Well, what's the legal basis for your argument? I mean, these kinds of claims are commonly, I'd say almost always, joined for trial. What's the basis of your argument? It shouldn't have been joined. It shouldn't have been there. Well, on what basis? Well, send me a case that says it shouldn't have been joined. There is no such case, is there? Not that I know of. On the other hand, if you grant qualified immunity timely, what is to be joined? That's the problem. Look, I've tried a lot of cases, sir, and I understand that disparate causes of action and claims can be tried together. In this instance, the problem was that the qualified immunity would have eliminated the Fourth Amendment claims, so it shouldn't have been there in the first place. This is not a sort of demur situation where I dispute the original pairing up of them. It's that by the time trial came, it shouldn't have been there at all. That's the problem. Is that responsive to you? No, it's not responsive, because, you know, there are lots of instances where you can argue, well, that claim shouldn't have been there. But, for instance, you could even say that, you know, if the jury acquits on one count. But, I mean, that's not a legal principle that says the judge, I assume the test is abuse of discretion and not severing. Well, I've got abundant comment by the Supreme Court about the timeliness of decision on qualified immunity. I know as a fact that it was granted. So, this is a different situation than the common kind of situation which you're mentioning, and I agree that that is common. Not in this instance. It shouldn't have been there. It should have been excised, and it wasn't. And, therefore, the pairing is inappropriate. Have I ever been able to find a case that says that when a judge allows to go to trial that which shouldn't have gone to trial, contrary, by the way, again, to what the Supreme Court says itself about that right being lost, that that causes this kind of ripple prejudice? Answer, no. In that sense, this is a case of first impression. There's an abundance of law that says that juries are able to understand jury instructions and make decisions according to the instructions. And it seems to happen all the time where they're instructed on more than one charge. They come back with only one charge, and so they're able to figure things out. There is authority for that. I'm just trying to figure out on what authority you would say, and I guess I'm trying to go down the line that Judge Tashima was, that somehow they could not do that in this instance. There have to be two viable charges. I mean, yes, juries can consider disparate or even uncomplimentary claims or causes of action, and you're right. There are legion examples in the case law. But I find a none that pertains to a charge that should not have been there preliminarily in the first place. And that's what poisons this case. All right. I think I understand your argument on that. Let me ask you to switch to a little bit different topic. I think you're also contesting the fact that after a judge also granted that motion at a very late stage, that he still entered judgment for the entire sum of the verdict, right? Oh, yes, absolutely. You don't think that was correct either, right? Right. Now, give me just briefly your argument on that. There were three defendants against whom those damages were imposed. The jury's reaction to them was severe. We know that by the imposition of punitive damages. And that included some $200,000, a little less than $200,000 in general damages. Now, to take roughly $200,000 in general damages levied against three culpable defendants. But it was all joint and several, right? I don't believe it was joint and several. I don't know of any authority for that. You don't think it was joint and several? Oh, I know the First Amendment wasn't. So, to lift that and let's say that the Fourth Amendment was joint and several, and to lift that and put it over an entirely different basis for a ward, being the First Amendment, wholesale, is simply unjust. Why isn't it joint and several? Why doesn't the tort principle of joint and several liability apply in this case? Let's say that it does. Again, that's the Fourth Amendment, though. There's only one defendant found culpable under the First, so there would be no joint and several liability. The Fourth Amendment claim goes away because of qualified immunity. So, I don't know how that ever comes into play. Mr. Lombardi was the proximate cause of the injuries. Is that correct? No. He was a proximate cause of the injuries under the Fourth Amendment and the proximate cause of the injuries under the First. Now, all this could have been avoided if there were a special verdict or special interrogatories submitted to the jury. Now, was that discussed at all before the case was submitted to the jury? When I say that, I mean the form of the verdict. To the best of my knowledge, I was not the trial lawyer, but to the best of my knowledge, it was discussed, and the verdict was ultimately fashioned by the trial court. It's not a submission by the defense or the plaintiff. When you say it was discussed, from your recollection, what the discussion was, for instance, did the defense counsel ask for a special verdict? Mr. Rooney was present for that. May I ask him to reply to that question? Well, you can ask him later. Okay. Let us know on your rebuttal argument. I'm down to six minutes. It seems like there's two basic areas that you're addressing, and I'm just looking through the papers here. And I thought you conceded in your brief, yellow brief, page 12, that the Fourth Amendment evidence and First Amendment evidence in this case were essentially identical. They are essentially. The question was are they identical. Well, I'm glad I asked the question to find out that they're not exactly identical, but essentially identical. I'm trying to figure out how does that matter when we're looking at the issue that you've presented. It also looks like the district court correctly instructed the jury on both questions or both theories of liability. Again, we must presume that the jury followed those instructions. I guess my question, aren't those two facts enough for us to conclude that Officer Lombardi was not prejudiced by the district court's delayed decision in this case? No, because everything that pertains to excessive force, all the argument, all the instructions, the additional testimony that was offered on that issue, none of that should have been heard by the jury. We can never know how their reasoning process may have been corrupted by that. Okay. Thank you. You want to reserve the rest of your time? Yes, ma'am. Thank you. Thank you. Good morning, Your Honor. Stephanie Bradley for Plaintiff Frederick Jackson. Why don't we start up where we just left off? Can you respond to those statements made by your opposing counsel? Yes, Your Honor. There are multiple reasons why there's no prejudice arising from the trial of both the Fourth Amendment and the First Amendment claims in this case. The first is that the trial court's decision to delay a ruling on qualified immunity was proper in this case because contested issues of fact material to the qualified immunity determination were still out there, and therefore it would have been erroneous for him to make a ruling before trial on that. Second is Your Honor's point that essentially all of the evidence, would have come in on either a trial of the First Amendment alone or a trial of the combined Fourth and First Amendment claims because the primary questions in the two trials were the same. Why did the officers fire their tasers? Well, but they go to, you know, different bases of legal liability. And here's my problem. Jury returned a single verdict, general damages of $250,000, right? Yes. It was based upon a Fourth Amendment violation and a First Amendment violation. Now, there's several, a couple officers involved in the Fourth Amendment violation that weren't involved in the First Amendment violation. Not only that, there were, I would say, jury would think, substantially more injuries. I mean, there are three or four tasings associated with the Fourth Amendment violation and only one tasing associated with the First Amendment violation. So it seems to me a great bulk of the verdict can be attributable only to the Fourth Amendment violation. Well, Your Honor. What's wrong with that reasoning? I think that's what your opponent's arguing. There are two things wrong with my opponent's reasoning. The first is that his objections to this point are essentially a challenge to the special verdict form, which was never objected to at trial. Well, was there, he seemed to think there was some discussion in the verdict before the case went to the jury. There was. Were you trial counsel? I'm not trial counsel. All right. Do you have any recollection? Was that part of the trial reported? Certainly, yes. In the transcript, they did discuss the special verdict form, and they discussed, there was some discussion of how to structure that form, given that everybody knew that qualified immunity would be decided post-trial. And they did make some objections to the verdict form on other bases, but not that one. What do you mean by some objections? They didn't object. I don't recall what specific objections they made, but they did not object on the single spot on the form for tasing damages. But I'd just like to point out that it would have, regardless of what happened on qualified immunity after trial, it would have been obvious before trial from the fact that there were three defendants who fired three separate tasers, that a single spot on the verdict form for all damages arising for tasing would subject all of each officer to all damages for tasing, which is why this claim was waived. And it's similar to the Seventh Circuit decision in Fox v. Hayes where afterwards the defendant contested punitive damages because they weren't tethered to any particular claim in the special verdict form, and one of the potential bases for liability was overturned post-trial. And the Seventh Circuit there said that that was an objection that should have been raised to the verdict form. So that's the first reason is that they've waived an objection to any tasing damages that were not proximately caused by Officer Lombardi. And it's likely, by the way, as a strategic matter, that they preferred a single spot on the verdict form for damages. They didn't want the jury looking at damages serially, adding them together, and then potentially arriving at a higher number. And I will note that their proposed verdict form lumped all damages together under civil rights damages, which would have included also damages for, there were claims for slamming and other injuries, whereas the plaintiff's proposed verdict form separated them out by claim. And then overall, the actual evidence in this case was that one taser or three, the injuries Mr. Jackson suffered as a result would have been essentially the same because the kinds of injuries that he testified to all arose after he was tased and after he fell. They were skull, nasal and orbital fractures, hospital stay, time off from work, psychological injury. All of those would have arisen from a single firing of the taser. Was there a testimony to that effect? Yeah, I mean, the only evidence, the testimony was that a taser's functions to cause someone to fall to the ground. I know that, but was there a testimony to the effect that multiple tasings doesn't result in any greater injury than a single tasing? Yes, in fact, Your Honor, the only evidence on that subject- What about these cases? In fact, we have one earlier in the week where, you know, there's literature that says, you know, multiple tasings can even result in death. Well, the key point is that the jury does not alert it to any evidence of that nature. Well, that's what I'm getting at. So how can you say then, you know, multiple tasings aren't any worse than a single one? I don't think anybody would say, yes, give me three or four. Well, in fact, the only evidence in this case of the effect of multiple tasings came from the defendant's expert who testified that there was no effect from three tasings at once, that the way that the tasers operated, they worked, I guess, serially and therefore don't increase the voltage. And so only in this trial, there is no danger that the jury thought that three tasers caused additional injury. And again, all of what the plaintiff's counsel asked for in closing argument and all of the testimony regarding injury didn't even regard his experience of that tasing. It was the falls and his injuries that he suffered afterwards. That's why one taser or three, the effect would have been the same. If I may, Your Honor, I'd also like to note that- Excuse me. Is your point then that he was seriously injured after the first taser? It didn't matter about the others. Not that multiple tasers are not worse than single tasers. That's not what you were meaning to say. Am I correct? I don't know in the world what the effect of multiple taser cases is. In this case, the evidence was that multiple tasers have the same effect as one taser. I don't know. That was all that the jury had before them. What do you mean by the same effect? You mean like there's no greater pain? That's what the testimony was, yes. If you get tased a second time a little bit later, it doesn't hurt? Later, yes. But here, the party stipulated that they were virtually simultaneous. And so the only evidence was that these tasings actually occurred all at the same time. Thank you. If I may, I'd like to move to our cross-appeal on qualified immunity because if qualified immunity was improperly granted here, then most of defendant's argument on these points falls away. And I'd like to note also that at this procedural stage, which is the review of a Rule 50 motion, this court is required to view all of the evidence in Mr. Jackson's favor. And that makes sense in this case because the jury's verdict is impossible to reconcile with the defendant's version of the facts. If the jury had accepted their version of the facts where... Wait, repeat that. I don't think I follow. Repeat that statement again. The jury's verdict cannot be reconciled with the defendant's version of the facts. The jury's verdict. Okay, go ahead. Because if they had found that the defendant had struck Officer Hatcher, had balled his fists, and was preparing to do so again, it would have been, as a matter of law, they could not have found excessive force, much less punitive damages, and a finding that Officer Lombardi tased him in retaliation for his speech. Let's talk about the Bryan case. Sure. Okay. This court's decisions in Bryan and Matos do not apply here because, and other courts have recognized this distinction, those decisions, in all of those cases, some force was justified, either because of the suspect's resistance, even if slight, or failure to comply with police orders. Here, the evidence at trial viewed in Mr. Jackson's favor was that when he was tased, he was not resisting. He was standing still with one hand behind his back in handcuffs held by Officer Hatcher, the other over his head in a surrender position. In that situation, it would have been obvious from this court's precedence in Well, let me see, because I think there were the undisputed facts from the record or come from Mr. Jackson's testimony are the officers arrived and found one man, Mr. Jackson, who matched the description of someone who was fighting and carrying a knife, and another man, Mr. Davis, I believe. Who was hit. Yeah. On the ground. And he was bloodied, apparently, and lying near shattered glass from a broken windshield. Then as the officers attempted to control the situation, Mr. Jackson shouted and announced to everyone that the officers might try to kill, and then he used a term there, a racial term to reflect himself. And then Mr. Jackson nudged the officer, searching him for weapons, and then Mr. Jackson told Mr. Lombardi to shut the, and used another word, up. As Mr. Lombardi attempted to arrest Ms. Ashley Jackson, and then Mr. Jackson yelled, blank you, when Lombardi warned him to keep quiet. When you compare these facts to the facts in the Bryant case, I'm just trying to figure out how, if Mr. Bryant, in the case of Bryant, didn't fall within the obvious case exception, why should this one? The key difference is that in Bryant, he had multiple times disobeyed orders to get back into his car, and that is what gave the police justification to use some force. Here, there's no indication that a verbal command couldn't have achieved whatever the officers wanted Mr. Jackson to do. They gave him no opportunity to comply. I did want to go back to this question of whether he nudged the officers. Would you not say there's a lot of hostility and tension? Yes. I don't know that that was really the case in the Bryant case. In the Bryant case, I think it was the man driving. Disbehaving erratically, he was. Odd, I guess.  Is this the one with boxer shorts? I think so. He obviously didn't have a weapon. I'm just trying to see how we can reconcile these two scenarios. Again, it's that, first, the words that Mr. Jackson spoke, a jury has already determined that that was expressive speech that protected under the First Amendment, so that's not the type of thing that they were entitled to view as a threat. He didn't say he was going to do anything. It's been circumstances in total, isn't it? Of course. The testimony was, first, that he was, at the time he was actually tased, all that happened is he said he swore at those officers and then he was immediately tased. There was some testimony regarding a turn or a nudge. That occurred before he was tased. In between the time that he turned, and I will note that his deposition testimony that used the word nudge is ambiguous as to what he meant by that. At one point he says that an officer turned him, and that's what he meant by nudge. At trial he said he made a slight turn of his head. The jury was entitled to believe that. In any event, the officers did not tase him at that point. They waited for Officer Lombardi to come over and say, didn't my partner tell you to shut up? If you don't shut up, I'm skipping some profanity, I'll tase you. He swore back at that officer, and at that moment he was tased. The far more logical conclusion from that evidence is that he was tased because he spoke and not for any threat. Again, the difference from Brian is that they did not testify that he disobeyed an order. Their testimony was that they tased him because he balled his fists and was about to adopt a boxing stance, basically, and was about to hit Officer Hatcher. That testimony has been clearly rejected by this jury. What we're left with is his testimony and the testimony of eyewitnesses, disinterested eyewitnesses, who said that he was not resisting. Again, they don't say that they tased him because he disobeyed an order. There's just not the evidence to support that there was any justification for force here. On the facts, as the jury found, I think this court will be compelled to find by law that no force at all is justified in that situation. Let me just ask this question. Did the district court apply the wrong standard in its order regarding costs? Yes, somewhat. I understand that they do give a great degree of discretion to the judge on costs. I would say that the district court should have just considered the punitive damages finding and misconduct by the officers in determining who should award costs, and that if this court finds in our favor unqualified immunity, it should be given a chance to reassess costs in light of the change in winning and losing parties. Okay, thank you very much. You're welcome. Ma'am. Please. The quote from Brian in the text of Brian is that Mr. Brian, quote, did not pose an immediate threat, and he didn't. Secondly, we do not know to what extent the jury did or didn't reject in whole or in part aspects of the officer's testimony. We know what the ultimate conclusion was. We don't know if they accepted the officer's testimonies but felt that under the circumstances three tasings was excessive, et cetera, et cetera. We just don't have any insight at all into whatever particular aspects of testimony may or may not have been accepted. As an aside, by the way, in response to you earlier, we did quote or cite a case in our third cross-appeal brief, page 19, pertaining to the notion of joint and several and collective. In the Fourth Amendment. Can you stand behind me? I'm sorry. I'm used to wandering. Not here. Not here. In the Fourth Amendment, the officers have to be evaluated individually. Thank you. You're welcome. There is a letter that was received by you from the plaintiff's attorney on November 26. It has various citations in it. I did not have an opportunity to respond to it, and I don't particularly want to now accept by way of explanation to you saying that what I'm about to read to you was prompted by research as a consequence of that letter, and that is why the citation that I'm about to give you is not in my brief. For that, I apologize, but I reacted after November 26. There's a case called Ciampi, C-I-A-M-P-I, versus City of Palo Alto. It is a May 11, 2011 case. Its citation is 790F2nd1077. It is from the San Jose Division of the District Court. In that text, the district court judge notes, after some discussion of some other authorities, the following. Quote, the court has not found that the law regarding tasers was significantly clarified between 2005, when the conduct in Bryan occurred, and March 15, 2008, when the incident at issue in this case occurred. Bear in mind that this incident occurred on March 30, two weeks later. Bryan thus appears to compel a finding of qualified immunity in this case. Would you please submit the citation to opposing counsel and to this court, to the court clerk? Presently or? No, after. Thank you. So, to me, that underscores the fact that Bryan applies here. Bryan especially applies here because of what you, ma'am, have noted about the particulars. What? You wanted to say something and then stop. Go ahead. Was it ma'am? That's what I say. Go ahead. Here, Jackson was neither subdued nor arrested or controlled. As you have pointed out, the report was about a man armed with a knife. There was blood on display. Jackson had not yet been completely searched. Jackson still had a hand free and in the air. He was free enough to turn, and he perpetrated whatever we're going to call it, call it the nudge. This is all corroborated by Jackson. This is not one-sided testimony. So, under all of these circumstances, these officers are entitled, were entitled to qualified immunity under Bryan, and as they were, again, they shouldn't have been facing the First Amendment, pardon me, the Fourth Amendment in any event. 14 seconds. Do you have any questions for me? What is your response to Ms. Bradley's argument that, well, you raised nothing about this aspect of the former verdict before the case went to the jury and that you waived any argument about, you know, the verdict is insufficient to separate out the damages attributable to the Fourth Amendment and the First Amendment violations? The only response I have to, again, being in mind that I was not there and what I may have done or not done is not relevant, but as far as the verdict form itself is concerned, there had already been, in effect, two rulings denying Bryan. I don't, and I'm not surprised that no one suspected at all that there would be an elimination by judicial decision of the Fourth Amendment and that they would be left only with the First Amendment. Should someone have had that kind of discernment, maybe, but I wouldn't have and I doubt that anybody else would have. Thank you. Because this is a cross, there's a cross appeal. Do you want to respond briefly to anything at this point? I'm sorry? Yes. Okay. Thank you. Well, I appreciate the arguments and the cases now submitted. Thank you very much. Do you want it in the form of a letter? We used to have gum sheets, but all right. We have gum sheets. Give the citation to the clerk, if you would, and to opposing counsel.
judges: Nelson, Tashima, Murguia